IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RILEY Q. LINDEN,<br><br>             Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>             Defendant. | 7:15-CV-5005<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the denial, initially and upon reconsideration, of the plaintiff Riley Linden's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and supplemental social security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* The Court has considered the parties' filings and the administrative record. For the reasons discussed below, the Commissioner's decision is reversed and remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

Linden applied for disability insurance benefits on May 2, 2012. T165-178. His claim was denied initially on July 31, and upon reconsideration on November 9. T57-58, 81-82. Linden appealed and requested a hearing from an administrative law judge (ALJ). T27-30. The ALJ held a hearing on March 28, 2014. T31. In a decision dated April 18, the ALJ found that Linden was not disabled as defined under 42 U.S.C. §§ 416(i) or 423(d), and therefore not entitled to benefits. T19-21.

1

## SEQUENTIAL ANALYSIS

Disability, for purposes of the Social Security Act, is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i) & 423(d).

To determine whether a claimant is entitled to disability benefits, the ALJ performs a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant has the burden to establish that he has not engaged in substantial gainful activity since his alleged disability onset date. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). If the claimant has engaged in substantial gainful activity, he will be found not to be disabled; otherwise, at step two, he has the burden to prove he has a medically determinable physical or mental impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities. *Id.*

At step three, if the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, he is automatically found disabled and is entitled to benefits. *Id.* Otherwise, the analysis proceeds to step four. But first, the ALJ must determine the claimant's residual functional capacity (RFC), which is used at steps four and five. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is what he can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). At step four, the claimant has the burden to prove he lacks the RFC to perform his past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his past relevant work, he will be found not to be disabled; otherwise, at step five, the burden shifts to the

Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*; *Jones v. Astrue,* 619 F.3d 963, 971 (8th Cir. 2010).

THE ALJ'S FINDINGS

Linden alleged disability as a result of Type II diabetes mellitus, chronic obstructive pulmonary disease (COPD), bilateral knee osteoarthritis, degenerative disc disease, and post-L4/S1 fusion. T262. He also reports experiencing post-traumatic stress disorder, personality disorder, rule-out narcissistic personality disorder, and alcohol abuse in full remission, although these do not appear to have been advanced to the Commissioner as a basis for disability. T262. He alleges an onset date of October 15, 2010. T165, 172. At that time, Linden was 51 years old. T165. The ALJ found that, based on his earnings record, Linden could remain insured through December 31, 2015. T10. So, the question for the ALJ was whether Linden had demonstrated a disability for some period of not less than 12 months between October 10, 2010 and March 31, 2015.

At step one, the ALJ found that Linden had not engaged in substantial gainful activity following his alleged onset date. T12. Next, at step two, the ALJ found that Linden had several severe impairments: postL4/S1 fusion, degenerative disc disease, bilateral knee osteoarthritis, COPD, and type II diabetes mellitus. T12. At step three, the ALJ found that Linden had no impairment that met or medically equaled a listed impairment. T14. The ALJ then determined that Linden had the RFC to

> perform medium work . . . as he can lift/carry 25 pounds
> frequently and 50 pounds occasionally; sit, stand, and walk 6
> hours each in an 8-hour workday; and push/pull within the

3

weight limits. He can occasionally climb ramps and stairs, but cannot climb ladders and scaffolds. He cannot have concentrated exposure to pulmonary irritants. He cannot work at unprotected heights or with vibrating tools.

T14-15. Because the ALJ's RFC finding is the critical issue in this appeal, the Court will examine the ALJ's underlying reasoning in more detail.

The ALJ found that Linden had made inconsistent or unsupported statements concerning his functional abilities, that diminished his credibility. T16. The ALJ also noted a history of medical non-compliance. T17. And, the ALJ noted, although Linden "complains of significant back pain and other musculoskeletal symptoms, the evidence shows that he sought treatment only at the emergency room and with his primary care providers, but not with any orthopedic specialists as would be expected given his allegations of debilitating symptoms." T17.

The ALJ acknowledged that two separate State agency medical consultants had imposed more stringent physical limitations on Linden. T19. Jerry Reed, M.D., examined Linden's medical records from his treating physician, Michael Matthews, M.D., and found in a report dated July 23, 2012, that Linden's medically determinable impairments could reasonably be expected to produce his pain or other symptoms, although he only found Linden to be partially credible. T64. Dr. Reed found that Linden could lift 10 pounds frequently and 20 pounds occasionally; could sit, stand, or walk for a total of about 6 hours in an 8-hour workday; and could push or pull within the weight limits. T65. He could occasionally climb ramps and stairs, but not ladders or scaffolds. T65. He could occasionally stoop, kneel, crouch, or crawl. T65. His ability to reach overhead was limited. T66. And he should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, and poor

4

ventilation. T66. Steven Higgins, M.D., reached the same conclusions in a report dated November 9, 2012. T89-90.

But the ALJ found those opinions only "partially credible." T19. The ALJ explained:

> Evidence received at the hearing shows that the claimant is not as limited in his abilities to lift/carry. In April 2010, six months prior to his alleged onset date, the claimant reported working hard physically landscaping and washing and painting walls, and participating in a "pushing iron" contest. He was doing landscaping work in August 2010, two months prior to his alleged onset date. In August 2011, he reported carrying hacker-board (which weighs 60-80 pounds). In September 2013, he discussed going back to work and in October, Dr. Matthews reported that the claimant was back at work. In October, the claimant dropped a bag of cement (which weighs 60-90 pounds) on his foot.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In sum, the above residual functional capacity assessment is supported by the mild-to-moderate clinical and objective findings, the lack of any treatment by orthopedic specialists for allegedly disabling musculoskeletal symptoms, the claimant's adequate

> activities of daily living, including child care, his inconsistent statements and treatment gaps, and the record as a whole.

T19-20 (citations omitted).

At step four, based on her RFC finding, the ALJ found that Linden retained his ability to perform his past relevant work as a kitchen helper. T20. Alternatively, the ALJ went on to find at step five that Linden did not have a disability under the Medical-Vocational Guidelines, *see* 20 C.F.R. Part 404, Subpart P, Appx. 2. T20-21. And as a further alternative at step five, the ALJ found, based on the vocational expert's testimony, that Linden could perform other jobs that existed in significant numbers in the national economy. T21. So, the ALJ found that Linden was not disabled. T21.

On August 18. 2015, the Appeals Council of the Social Security Administration denied Linden's request for review. T1. Linden's complaint (filing 1) seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision, and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from

the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id*.

## DISCUSSION

Linden appeals the ALJ's order on two primary grounds: (1) that the ALJ's RFC determination was not supported by substantial evidence, and (2) the ALJ failed to fully and fairly develop the record. Filing 16 at 2. The Court agrees on both points.

### THE ALJ'S RFC FINDINGS WERE NOT BASED ON SUBSTANTIAL EVIDENCE BECAUSE THEY WERE NOT SUPPORTED BY MEDICAL EVIDENCE

The ALJ may assess a claimant's RFC "based on all relevant evidence," but the determination of RFC is a "medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, some medical evidence must support the determination of the claimant's RFC. *Id*. This evidence should include at least some supporting evidence from a medical professional. *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). But in this case, the ALJ rejected the only medical opinions in the record.

To begin with, the ALJ's basis for rejecting those opinions is not well-supported. It is evident that the ALJ had substantial concerns about Linden's credibility. The Court does not disagree with those concerns. But this is not a case in which the claimant's condition is wholly—or even mostly—subjective. There is little dispute about Linden's underlying physical diagnoses. Nor is it a case in which medical opinion testimony was based on acceptance of the claimant's subjective complaints. Dr. Reed and Dr. Higgins both expressly premised their opinions on finding that Linden's own statements were only partially credible. T64, 88. In other words, the finding that Linden was only

partially credible was already "baked into" their medical opinions—so, questions about Linden's credibility do not support rejecting those opinions.

Nor do the ALJ's observations about Linden's activities support rejection of Dr. Reed's and Dr. Higgins' medical opinions. True, there is evidence that Linden was engaged in activity exceeding what the medical evidence suggests was advisable. But most of the examples pointed out by the ALJ preceded both medical opinions by no less than several months. Nor is it necessarily inconsistent with medical limitations if a claimant (who had been denied benefits, and had a family to support) exceeded those limitations in an effort to return to work. It would be very strange if an ill-advised attempt to work could somehow become evidence of malingering. It is not irrelevant that a claimant exceeds his claimed medical limitations. But it is not proof that those limitations did not exist. Many people do not always follow their doctor's advice, but that doesn't mean the advice was wrong.

But more important than the ALJ's basis for rejecting the medical opinion testimony in the record is what the ALJ did as a result: crafted new medical limitations without explaining where those limitations came from. The Court recognizes that in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively, and that even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). But that determination must be based on medical evidence that addresses the claimant's ability to function in the workplace. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). And there is literally no medical evidence in this record supporting the ALJ's determination that Linden can lift or carry 25 pounds frequently and 50 pounds occasionally.

8

Those are important numbers, because the difference between the ALJ's finding and the medical evidence is the difference between being able to perform medium level or only light work—meaning that those numbers were necessary to find that Linden had not met his burden of showing he was unable to perform his past relevant work. Had he met that burden, the burden of proof would have shifted to the Commissioner. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). And the Commissioner concedes that if the ALJ erred in finding Linden capable of medium level work, the error is not harmless. *See* filing 17 at 14 n.4.

It is the ALJ's function to resolve conflicts among the various treating and examining physicians. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). But here, there was no conflict, except between the medical experts and the ALJ. And the ALJ's solution to that conflict was to find the medical opinion testimony "partially credible" and draw weight limitations for Linden without anticipating the basis for those limitations. This, the Court concludes, is prejudicial error requiring reversal.

THE ALJ FAILED TO FULLY DEVELOP THE RECORD

The ALJ has both the authority and the duty to fully develop the record, independent of the claimant's burden of proof. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008). For example, in *Scott*, the Eighth Circuit held that where an ALJ denied benefits in part because a claimant's IQ test results were not current on the date of the hearing, the ALJ should have ordered updated tests. *Id.* In this case, the ALJ made a disability determination despite finding that Linden had a degenerative physical impairment, and despite rejecting the only two medical opinions in the record, which were themselves almost 2 years out of date by the time of the ALJ's decision.

9

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). There are three particular aspects to the ALJ's failure to develop the record in this case. First, it seems to have been evident that the medical records before the ALJ were incomplete. It was, in fact, discussed at the hearing: when Linden testified about some emergency room visits, the ALJ asked whether she had those records. T45. Linden's counsel replied, "All I know, Judge, is we requested records from all the sources we're aware of and have sent in all the records we've received. I guess that's all I can tell you." T45. But social security hearings are non-adversarial, and an ALJ has a duty to fully develop the record, even when the claimant is represented by an attorney. *Johnson v. Astrue,* 627 F.3d 316, 319-20 (8th Cir. 2010). Furthermore, the record suggests that contrary to the ALJ's decision, Linden *was* referred to an orthopedic specialist in 2013. T516, 521, 528, 530, 537-38. But no information relating to those examinations was obtained.

Second, the limitations of the record were particularly implicated by the ALJ's conclusion that the medical opinion testimony that was available was deficient. There were some obvious steps that could have been taken to develop the record with respect to Linden's physical limitations and establish a medical basis for an RFC determination. Obviously, it would have been extremely helpful to have opinion testimony from Linden's treating physician, Dr. Matthews.[1] And in the absence of other persuasive opinions,

---

[1] The Commissioner argues that opinion testimony *was* sought from Dr. Matthews as part of the administrative process, but he simply didn't respond. Filing 17 at 16 (citing T211-215). But it is not evident to the Court how clear or persistent such requests might have been. *Compare* filing 16-1. While the Court is sympathetic to the Commissioner's position,

the ALJ could have ordered a consultative examination, rather than crafting an RFC based on "partially credible" opinions from non-treating medical experts. It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him or her to make an informed decision. *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). As the Eighth Circuit explained in finding that an ALJ's denial of disability benefits was unwarranted,

> [i]n the case at bar, there is no *medical* evidence about how [the claimant]'s impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [the claimant]'s RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. In our opinion, the ALJ should have sought such an opinion from [the claimant]'s treating physicians or, in the alternative, ordered consultative examinations . . . to assess [the claimant]'s . . . residual functional capacity. . . . An administrative law judge may not draw upon his [or her] own inferences from medical reports.

---

it is still unclear to the Court what the ALJ did to fulfill her duty to develop the record with respect to Dr. Matthews.

*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (citations omitted). Similar circumstances are present here.

Finally, the Court observes that the ALJ's determination rested in part on issues that were not raised by the ALJ at the administrative hearing. For instance, the ALJ discredited Linden's claims in part because of Linden's alleged failure to see an orthopedic specialist. T17, 20. As noted above, that appears to have been an incorrect assumption—and, it was an assumption that might have been corrected had the ALJ asked Linden about it at the hearing. An ALJ is required to consider the reasons for a claimant's failure to seek treatment, or non-compliance with treatment, before discounting the claimant's credibility on that basis. *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009). But here, the ALJ rested her credibility determination on the claimant's purported failure to seek a particular *kind* of treatment, without asking the claimant about it. Nor did the ALJ ask Linden about the other asserted inconsistencies in the record—for instance, why he had exceeded his medical limitations, or why there were gaps in his treatment. On issues like these—issues for which the claimant might have a reasonable explanation or clarification to offer—the ALJ's duty to develop the record suggests a responsibility to ask the claimant for an explanation before holding the lack of an explanation against him.[2]

---

[2] Linden also suggests that the ALJ should have developed the record with respect to alleged mental impairments. Filing 16 at 32-33. To be clear, the Court is *not* finding error in that regard: it is not clear that any mental impairments were clearly presented to the Commissioner as bases for a finding of disability, and the ALJ is not obligated to investigate a claim not presented at the time of the application for benefits or offered at the hearing as a basis for disability. *Mouser*, 545 F.3d at 639. But obviously, nothing precludes counsel or the Commissioner from investigating those issues on remand.

CONCLUSION

Based on the lack of medical evidence in the record supporting the ALJ's determination of Linden's RFC, and the ALJ's failure to develop the record (particularly in light of the ALJ's partial rejection of the medical evidence that *was* in the record), the Court will reverse the Commissioner's decision and remand this case to the Social Security Administration for further proceedings consistent with this opinion.

IT IS ORDERED:

1. This case is reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

2. A separate judgment will be entered.

Dated this 14th day of April, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge